**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| CRAIG SPRINGER, individually and as next friend of his minor child, A.S., *Plaintiff*, | § § § § | |
| v. | § § | CIVIL ACTION No. 1:23-cv-01137 |
| ESTANCIA VALLEY CLASSICAL ACADEMY, a New Mexico public school, KIM ADAMS, THERESA NUNNELEY, BILL RICHARD and STEPHEN DAUPHIN, *Defendants*. | § § § § § § § | **JURY DEMANDED** |

---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

---

COMES NOW the Plaintiff, CRAIG SPRINGER, by and through undersigned Counsel, and hereby respectfully alleges and shows as follows.

**<u>INTRODUCTION</u>**

1.  This is an action for damages and injunctive relief pursuant to 42 U.S.C. § 1983, for violation of First Amendment freedom of speech rights, and deprivation of property without due process of law, in violation of the 14th Amendment; and for damages pursuant to supplemental claims arising under state law, viz., violation of free speech guarantees under the New Mexico Constitution, defamation, and tortious interference with contract.

2.  Defendant Estancia Valley Classical Academy ("EVCA") is a conservative K-12 public charter school in Edgewood, New Mexico, that offers what it describes as a classical education emphasizing the founding values of the United States. Only declarative and injunctive relief is sought against EVCA.

3.   Until June 2023, EVCA was affiliated under contract as a "member school" with Hillsdale College ("Hillsdale"), a private, politically conservative liberal arts college in Michigan, through Hillsdale's Barney Charter School Initiative ("BCSI").

4.   Hillsdale enjoys nationwide brand recognition among conservatives and affords member schools considerable educational resources for students. Many teachers and parents, including Plaintiff Craig Springer ("Mr. Springer")—whose daughter, A.S., is a student at EVCA—were drawn to the school primarily because of its Hillsdale member school affiliation.

5.   When it was publicly revealed in July 2023 that EVCA's Governing Council ("GC") had terminated EVCA's member school affiliation with Hillsdale two months earlier, many teachers and parents opposed the move, including Mr. Springer, who became outspoken.

6.   On September 18, 2023, at a public meeting of the GC, the floor was opened for members of the community to comment in three-minute allotments. But when Mr. Springer rose to speak, within a few seconds he was interrupted, shouted down, spoken over, called a liar, and prevented from delivering public comment, by Defendants, who were members of the GC.

7.   The GC member Defendants' conduct constitutes viewpoint discrimination in a designated public forum, in violation of the First Amendment.

8.   By terminating EVCA's member school affiliation with Hillsdale, the GC remade EVCA into a fundamentally different school: without Hillsdale member school status, hundreds of longtime students were withdrawn, and the nature and quality of education have declined.

9.   The GC member Defendants also violated Mr. Springer's free speech rights guaranteed under the New Mexico Constitution, defamed Mr. Springer, unlawfully deprived A.S. of her property interest in a Hillsdale education without due process of law, and tortiously interfered in EVCA's contract with Hillsdale, of which A.S. was a third-party beneficiary.

## PARTIES

10. Plaintiff Craig Springer is a resident of Santa Fe County, New Mexico, and brings this action both individually, and as next friend of his minor daughter, A.S., who resides with him.

11. Defendant Kim Adams is a resident of New Mexico.

12. Defendant Theresa Nunneley is a resident of New Mexico.

13. Defendant Bill Richard is a resident of New Mexico.

14. Defendant Stephen Dauphin is a resident of New Mexico.

15. Defendant Estancia Valley Classical Academy is a public, K-12 school chartered by the New Mexico Public Education Commission, and located in Edgewood, New Mexico. At all times relevant to this action, each of the above-named Defendants was a member of the Governing Council of Estancia Valley Classical Academy.

## JURISDICTION & VENUE

16. Plaintiff invokes this Court's original jurisdiction under the United States Constitution, Article III, Section 2, and under 28 U.S.C. §§ 1331 and 1343(a)(3), because this action raises federal questions pursuant to 42 U.S.C. § 1983, for violation of civil rights guaranteed by the First and 14th Amendments to the United States Constitution.

17. Under 28 U.S.C. § 1367, the Court is empowered to, and should, exercise supplemental jurisdiction to hear all state law claims asserted herein, because those claims are so related to the claim within the Court's original jurisdiction that they form part of the same case or controversy.

18. Venue is proper before the District of New Mexico pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events, acts, and omissions giving rise to the claims herein occurred within this District.

## GENERAL ALLEGATIONS OF FACT

19. Plaintiff Craig Springer ("Mr. Springer") is the father of two alumni and one currently enrolled student of Defendant Estancia Valley Classical Academy ("EVCA").

20. Mr. Springer's wife, Felicia Valenzuela-Springer ("Mrs. Springer"), has been employed by EVCA as an educational assistant since 2019.

21. Mr. Springer's minor daughter, A.S., is currently enrolled in the 11th grade at EVCA, and has been a student there continuously since 2017.

### I.    EVCA's Roots as a Hillsdale School

22. EVCA was founded in 2012 as a "member school" affiliated with Hillsdale College ("Hillsdale")—a private, politically conservative liberal arts college in Michigan—as part of Hillsdale's Barney Charter School Initiative ("BCSI"). At the time of its founding, EVCA was only the second BCSI member school in the U.S.

23. Hillsdale is known for its postsecondary programs, but is also "widely known as the go-to resource for conservatives looking to overhaul K-12 education." [1]

24. BCSI is similar to a franchise program, and is described by Hillsdale as "an outreach program… devoted to the revitalization of public education through the launch and support of classical K-12 charter schools." [2]

25. Mr. Springer was originally drawn to enroll his children in EVCA, and has kept them there over the years, primarily because of its affiliation with Hillsdale as a member school.

26. In the decade since EVCA's founding, tours of the school have regularly been given to prospective students and their families, by numerous EVCA faculty, staff, and administrators. In

---

[1] "Conservatives are changing K-12 education, and one Christian college is at the center." Kingkade, Tyler. July 26, 2023. *NBC News*. Retrieved November 3, 2023.
[2] https://k12.hillsdale.edu/About/BCSI/

the course of these tours, EVCA's Hillsdale member school affiliation has routinely been mentioned to prospective students' families as a major selling point. Indeed, many prospective students' families were drawn to EVCA because they had heard about EVCA's Hillsdale member school affiliation, prior to inquiring about enrollment.

27. Affiliation with Hillsdale affords member schools numerous resources including a full curriculum; online learning materials for students; training and consulting for teachers, administrators, and GC members; public relations and marketing resources; limited legal representation; and access to a hiring pool of Hillsdale-trained teachers.

28. EVCA's affiliation with Hillsdale as a BCSI member school was subject to a contract between Hillsdale and the EVCA Foundation ("the Hillsdale contract"). **Exhibit A**.

29. The Hillsdale contract provides for close consultation by Hillsdale with EVCA to ensure compliance with Hillsdale's standards, and with state law.

30. Hillsdale also requires member schools to adhere to its "Best Practices" for administration and governance, **Exhibit B**, including term limits on board members, that founding board members put forward a succession plan, that board members be independent, and that the board refrain from engaging in delegated administrative functions.

31. The Hillsdale contract allows Hillsdale to terminate for non-compliance by EVCA with state law, BCSI's mission and standards, or the school's charter.

**II.      The Governing Council Terminates the Hillsdale Contract**

32. EVCA styles its Board as the Governing Council ("GC") and titles the school principal as Executive Director ("ED"). At all times relevant to this action, Defendants Kim Adams, Theresa Nunneley, Bill Richard, and Steve Dauphin were GC members; as were Tera Dick and Roger Lenard, (who are not named as defendants herein). In addition, Deron Knoner (who is not named

as a defendant herein) served as GC President for the 2022-23 school year. Upon his resignation from the GC at the end of June 2023, Mr. Knoner was replaced as GC President by Defendant Adams, as of July 2023.

33. The GC holds a regular public meeting one evening per month. These meetings typically last about three hours, with public comment taken towards the beginning of the meeting.

34. A regular monthly GC meeting was held on May 18, 2023, from 6:30-9:39pm. A quorum of the GC was present at the May 18th meeting, consisting of Knoner and Dick, as well as Defendants Adams, Dauphin, Nunneley, and Richard.

35. At the May 18th meeting, the GC voted unanimously to terminate EVCA's member school contract with Hillsdale, and instead become a Hillsdale "curriculum school."

36. This decision meant that EVCA would continue using Hillsdale's K-12 curriculum without any other resources offered by Hillsdale to member schools, and without obligation to abide by Hillsdale's Best Practices.

37. Upon information and belief, the GC member Defendants planned the May 18th meeting intending to terminate the Hillsdale contract in a technically public, but effectively private, setting.

38. Each month, at least seventy-two (72) hours before its monthly meeting, the GC publishes the agenda for that month's meeting on EVCA's website.

39. Upon information and belief, the May 18th agenda was not published on the EVCA website prior to the meeting.

40. Approximately forty agenda items are listed on the May 18th agenda. **Exhibit C**. Of these agenda items, "Hillsdale Contracts" is the last substantive item listed.

41. Listing "Hillsdale Contracts" at the end of the agenda ensured that it would be discussed hours after the meeting had begun, long after the close of public comment.

42. No further information about what would be discussed and voted on regarding "Hillsdale Contracts" was made available to parents, faculty, or staff before the meeting.

43. The May 18th meeting minutes do not reflect that public comment occurred. **Exhibit D**.

44. At the May 18th meeting, from 7:26-8:27pm, the GC held a planned "Executive Session" that was closed to the public.

45. Only after this closed session was "Hillsdale Contracts" discussed and a unanimous vote taken to alter EVCA's affiliation with Hillsdale from "member school" to "curriculum school."

46. Upon information and belief, no one but the aforenamed GC members, and Executive Director Rivera, were present for the "Hillsdale Contracts" portion of the May 18th meeting.

47. No input from parents, faculty, and staff about altering EVCA's affiliation with Hillsdale was publicly sought or received by the GC before the decision to do so was reached.

48. The May 18th meeting minutes reflect two reasons asserted by the GC for its decision.

49. First, Mr. Knoner stated that term limits on the GC present a challenge because not enough community members are available to serve on the GC.

50. Second, Defendant Adams stated that Hillsdale requires the ED to oversee finance and student performance, which conflicts with state law requiring the GC to oversee those things.

51. Upon information and belief, each of these two reasons was false or misleading.

52. On or about June 19, 2023, ED Rivera, without prior approval of the GC, emailed faculty and staff announcing the GC's decision.

53. Prior to ED Rivera's announcement, the GC had no plans to announce its Hillsdale decision to faculty and staff.

54. On July 20, 2023, at a meeting of the GC, parents and teachers who had heard about the decision to alter EVCA's Hillsdale affiliation gave public comment opposing the decision.

55. Prior to July 20th, the GC had no plans to announce its decision to parents.

56. Upon information and belief, the May 18th meeting minutes were not published on the EVCA website until July 28th.

57. EVCA continued to hold itself out as a Hillsdale member school on its website through October 2023.

**III.    Loss of Hillsdale Member School Status is Detrimental to EVCA Students**

58. By terminating its member school affiliation with Hillsdale, EVCA became a fundamentally different school than the one where Mr. Springer enrolled his daughter, A.S., in 2017, due to the declining quality of instruction and learning environment.

59. Hillsdale online research materials are no longer available to EVCA students.

60. Between July and November 2023, at least 115 students were withdrawn from EVCA by their families, meaning that in five months, more students withdrew from EVCA than in any prior year.

61. As of November 2023, enrollment was at 595, meaning that enrollment declined below 600 students for the first time in at least three years.

62. Upon information and belief, the removal of students in response to EVCA's loss of Hillsdale member school status has resulted in an increase in remedial enrollees.

63. From June 18-29, 2023, Hillsdale held its "K-12 Summer Conference," an annual training conference in Michigan for teachers from BCSI member schools nationwide.

64. Then-EVCA teachers Tim and Tari Thiery ("Mr. and Mrs. Thiery") travelled to Michigan from New Mexico to attend the conference. Mr. and Mrs. Thiery are a married couple who

relocated from Indiana to New Mexico over a decade ago to teach at EVCA, because of its Hillsdale member school affiliation. Mrs. Theiry is a Hillsdale "Master Teacher," and Mr. Thiery is a classically trained teacher who also served as EVCA's Executive Director for several years.

65. While attending the conference, Mr. and Mrs. Thiery were informed by Hillsdale staff that EVCA had lost its member school status.

66. In early July 2023, Mr. and Mrs. Thiery resigned from EVCA.

67. Mr. and Mrs. Thiery resigned from EVCA because of the school's abandonment of Hillsdale member school affiliation.

68. Mr. and Mrs. Thiery now teach at a Hillsdale BCSI member school in Gallup, NM.

69. Mr. and Mrs. Thiery's departure has strained other teachers, who are less familiar with, and lack training to teach, the subjects Mr. and Mrs. Thiery were teaching.

70. Other teachers have left EVCA because of its loss of Hillsdale member school affiliation.

71. As a non-member school, EVCA is unable to have new teachers trained at Hillsdale.

72. Because Edgewood is a remote community, EVCA must be less selective in hiring, and resort to hiring teachers who have no background in the classical education model, who now cannot be trained at Hillsdale.

73. Since EVCA's loss of Hillsdale member school affiliation, there has been no in-house teacher training in the methods of classical education.

74. Since July 2022, the proportion of teachers at EVCA who are trained in the methods of classical education has declined to around ten percent.

75. The classical teaching methods promoted by Hillsdale are designed as an alternative to methods typically used in public non-charter schools.

76. As EVCA's capacity to provide classical education diminishes, the administration is transitioning from evaluating teachers based on the classical model, to evaluations based on the public non-charter school model.

77. As EVCA's capacity to provide classical education diminishes, EVCA continues to hold itself out publicly as a classical school.

### IV.   The GC Member Defendants Have a History of Failure to Abide by Applicable Law and Hillsdale Best Practices

78. Since 2014, the GC has consistently fallen short of Hillsdale's Best Practices.

79. Defendants Adams and Nunneley have both been seated on the GC for over a decade.

80. Upon information and belief, neither Defendant Adams nor Defendant Nunneley has ever proffered a succession plan to relinquish her seat on the GC.

81. GC members are not independent, but are selected by Defendants Adams and Richard.

82. For years, GC members have regularly engaged in delegated administrative duties at EVCA.

83. Defendants Adams and Nunneley are often on campus supervising teachers and staff.

84. Upon information and belief, Defendants Adams and Nunneley have sat in on Individualized Education Plan meetings for developmentally disabled students and given teachers directives in those meetings, without qualification to do so and without prior written consent from the students' parents.

85. Upon information and belief, EVCA faculty and staff who criticized the GC for failure to abide by law and Best Practices have been subject to intimidation by GC member Defendants.

86. Upon information and belief, Defendant Adams has screamed at teachers and members of staff in the course of overseeing them, and insinuated or directly made threats of termination.

87. On August 18, 2023, ED Rivera emailed all EVCA staff and faculty, stating she heard GC members are interfering in teachers' day-to-day duties, that staff and faculty "fear retribution" from the GC for voicing their concerns, and asking staff and faculty to come forward.

## V.  The Fallout from May 18th, and Plaintiff Craig Springer's Activism

88. In early July 2023, the Plaintiff, Mr. Springer, first learned of the GC's decision to abandon EVCA's Hillsdale member school affiliation.

89. On July 11, 2023, Mr. Springer emailed the GC expressing disappointment over the decision, and to ask why it was made.

90. On July 12, 2023, Defendant Adams responded to Mr. Springer's July 11th email, stating only that the decision was mutual between EVCA and Hillsdale; that EVCA would continue using Hillsdale's curriculum; and that the GC would soon announce the decision.

91. On July 14, 2023, Mr. Springer replied to Ms. Adams's email, expressing his hope that a "robust explanation" would be forthcoming.

92. On July 15, 2023, Mr. Springer emailed Hillsdale, seeking more detailed information regarding EVCA's loss of member school affiliation. From July 15-20, 2023, Mr. Springer exchanged emails with Hillsdale staff.

93. In the course of the July 15-20th email exchange, Rebecca Lincoln, Hillsdale's Director of Teacher Support, stated that the GC wanted "to govern in ways that departed from our Office's best practices."

94. In the course of the July 15-20th email exchange, Katherine O'Toole, Hillsdale's Assistant Provost for K-12 Education, stated,

> Over the last four years we have worked to articulate the principles of board governance and school leadership to the team at the school [but] the board was hesitant to adopt the approach to governance that we had been recommending in our best practices…

95. On July 20, 2023, approximately thirty parents, faculty and staff who were opposed to the GC's decision regarding Hillsdale attended the GC's monthly meeting.

96. At the July 20th meeting, public comment in opposition to the GC's decision was heard from at least six people, including Mr. Springer.

97. In his July 20th public comments, Mr. Springer asked attendees for a show of hands of those who wanted EVCA to remain a Hillsdale member school. A majority raised their hands.

98. At the July 20th meeting, GC members told attendees that one reason for their Hillsdale decision was that Hillsdale is "dialing back" its charter school program.

99. Upon information and belief, that was untrue.

100.    On July 22, 2023, with the GC's knowledge and consent, Mr. Knoner emailed a letter to faculty and staff about the GC's decision to drop Hillsdale affiliation. **Exhibit E**.

101.    The July 22nd letter gave two reasons for the decision.

102.    First, the July 22nd letter stated that Hillsdale had promulgated new requirements for member school governance that compromised EVCA's autonomy.

103.    Second, the July 22nd letter stated that Hillsdale's new requirements conflicted with the school's obligations under state law and put its charter at risk.

104.    Upon information and belief, Hillsdale's requirements for member school governance were not new as of 2022-23.

105.    Upon information and belief, Hillsdale's requirements for member school governance and operations did not conflict with state law at all.

106.    On July 25, 2023, Mr. Springer received an email from Hillsdale Communications Assistant Lilly Duncan, which stated, "In response to a request from the former GC President,

we will be providing to Ms. Kim Adams the correspondence we have had with you." This request was made by Mr. Knoner.

107.    In late August, Mr. Springer contacted the GC and asked what state laws conflicted with Hillsdale member school requirements. The GC communicated to Mr. Springer only that statutes affecting EVCA Hillsdale affiliation are NMSA 1978, §§ 22-8B-12 and 13.

108.    On September 8, 2023, Mr. Springer emailed Hozho Academy ("Hozho"), a Hillsdale member school in Gallup, and asked whether Hozho had any information to suggest that Hillsdale affiliation may jeopardize its charter or conflict with state law.

109.    On September 11, 2023, Hozho's Principal responded to Mr. Springer, stating,

> We believe we are in compliance with applicable NM laws and there is no conflict between being a member school and being in compliance with both the expectations in the member school agreement as well as all NM laws, to our knowledge.

110.    On July 26, 2023, a letter announcing EVCA's loss of Hillsdale affiliation was sent to parents, faculty and staff by Defendant Adams. **Exhibit F**.

111.    The July 26th letter stated that education at EVCA would remain the same, EVCA would have greater autonomy, and the decision was mutual between Hillsdale and EVCA.

112.    The July 26th letter provided no other details about the reasons for the decision.

113.    On August 15, 2023, Mr. Springer sent a mass email to 150 EVCA community members including parents, faculty, and the GC members, passionately denouncing the GC for its decision to abandon EVCA's Hillsdale member school affiliation. One recipient then shared the August 15th email on the EVCA Parents' Facebook page.

114.    Numerous parents and faculty responded supportively to Mr. Springer's email.

115.    One such response, an email from former EVCA teacher and parent Julie Wechsler, stated that while employed at EVCA, "I was vocal about lapses in the curriculum as

well as GC overreach and I paid a price for it," and that teachers still fear retaliation from the GC and from Defendant Adams if they speak up.

116.     On September 11, 2023, Mr. Springer and EVCA science teacher Tracey Erickson ("Mrs. Erickson") appeared on a forty-minute episode of Tipping Point New Mexico, a podcast hosted by Paul Gessing, President of the Rio Grande Foundation, a libertarian think tank.[3]

117.     On the podcast, Mrs. Erickson explained that the loss of Hillsdale teacher training was likely to be particularly harmful to the quality of education at EVCA.

118.     Mrs. Erickson said she knew of no plan to conduct teacher training in house.

119.     Mrs. Erickson said the GC is heavily involved in routine school administration.

120.     Mrs. Erickson said the fact that the GC is unelected has troubled her family from the time they affiliated themselves with the school, and that many other EVCA families also feel that this contradicts the school's commitment to America's founding values.

121.     On the podcast, Mr. Springer stated that the GC abandoned EVCA's member school affiliation with Hillsdale because the GC refused to abide by Best Practices; and described the GC as "an oligarchy" that is abusing its power. Mr. Springer also discussed his communication with Hillsdale and reported some of what he had been told by Hillsdale about EVCA's decision to drop member school status.

122.     After appearing on the podcast, Mr. Springer sent a mass email to EVCA community members announcing, and providing a URL (i.e., a link) to view the episode.

**VI.     The GC Member Defendants Silence Mr. Springer**

123.     On September 18, 2023, the GC held its regular monthly meeting.

---

[3] The full podcast can be heard at: https://tippingpointnm.com/audio/539-developments-at-estancia-valley-classical-academy/

124.     Members of the community must sign in beforehand to give public comment, which is given in three-minute allotments.

125.     Mr. Springer arrived before the meeting on Sept. 18th and signed in to give public comment.

126.     When it was Mr. Springer's turn to speak, he began to deliver his prepared remarks, stating that "It has been 120 days since EVCA lost its Hillsdale member school affiliation, and we still have not been told why."

127.     Within less than twenty seconds of Mr. Springer's three-minute allotment for public comment, Defendant Dauphin interrupted Mr. Springer by stating, "I have to break protocol here. These are lies. You are a liar, and you are ugly."

128.     Defendants Adams, Richard, and Nunneley joined in, and also spoke during Mr. Springer's three-minute allotment for public comment.

129.     Defendants Adams, Richard, Dauphin, and Nunneley attacked Mr. Springer's podcast appearance, stated that Mr. Springer was lying, stated that the podcast was all lies, and stated that an explanation for the GC's decision had already been provided.

130.     Of the five GC members in attendance at the September 18th meeting, only Tera Dick did not speak during Mr. Springer's three-minute allotment for public comment.

131.     Mr. Springer tried to get a word in edgewise but Defendants Adams, Richard, Dauphin, and Nunneley continuously spoke over him and shouted him down. Mr. Springer was prevented by the GC member Defendants from delivering public comment.

132.     At least six people delivered public comment at the September 18th meeting. Of these, only Mr. Springer was interrupted, spoken over, or prevented from speaking.

133.     Of those who delivered public comment at the September 18th meeting, all but one spoke against the GC's decision to drop Hillsdale member school affiliation.

134.     On October 16, 2023, Mr. Springer attended the GC's regular monthly meeting, and again delivered public comment.

135.     Other community members who spoke at the Oct. 16th meeting spoke supportively of Mr. Springer.

136.     At the Oct. 16th meeting, while Mr. Springer was speaking, Defendant Richard mocked Mr. Springer by ostentatiously gesturing as if suppressing laughter.

## GENERAL ALLEGATIONS OF LAW

137.     EVCA is a public entity of the State of New Mexico, subject to all laws and regulations applicable to public entities. NMCA § 6.80.4.12(J).

138.     New Mexico law requires that "a charter school shall be governed by a governing body in the manner set forth in the charter contract." NMSA 1978 § 22-8B-4(B).

139.     EVCA's 2022-27 charter contract ("the charter contract") with NM PEC was effective, and its terms incumbent upon the GC, at all times relevant to this action. **Exhibit G**.

140.     The charter contract (Section 4, Part 4, paragraph i) incorporates by reference EVCA's contract with Hillsdale ("the Hillsdale contract").

141.     The Hillsdale contract requires that the governance of EVCA be consistent with the mission of BCSI and the requirements of state law.

142.     Under state law, GC members are required to undergo training in charter school governing body ethics and responsibilities, open government, and charter school legal and organizational performance. NMAC § 6.80.5.9.

143.     Upon information and belief, the GC member Defendants have undergone such training.

144.     The GC's decision to abandon EVCA's Hillsdale member school status was a matter of public policy subject to requirements of the New Mexico Open Meetings Act ("Open Meetings Act"). NMSA 1978 § 10-15-1(A)–(G).

145.     Before terminating EVCA's Hillsdale member school affiliation, Defendants failed to give reasonable notice to the public, in violation of NMSA § 10-15-1(D).

146.     Defendants failed to decide on the termination of the Hillsdale contract in an open public meeting, in violation of NMSA 1978 § 10-15-1(A) and (B).

147.     Of the exceptions to the public meeting requirements set forth in the Open Meetings Act, none applied to the discussion and vote taken in the May 18th GC meeting, to terminate the Hillsdale contract. NMSA § 10-15-1(H).

148.     The charter contract (Section 4, Part 7, paragraph i) incorporates EVCA's revised By-Laws adopted May 26, 2021 ("By-Laws"). **Exhibit H**.

149.     Defendants failed to decide on the termination of the Hillsdale contract in an open public meeting, in violation of the By-Laws (Article III, Section A, Paragraph 3).

150.     New Mexico law forbids charter school governing council members from performing delegated administrative functions. § NMAC 6.29.1.9(A)(4) and (5).

151.     By performing delegated administrative functions, Defendants jointly and severally violated state law.

152.     By performing delegated administrative functions, Defendants jointly and severally violated the By-Laws, Article III, Section A, Paragraph 2.

153.     By performing delegated administrative functions, Defendants jointly and severally violated the charter contract, Section 4, Part 7, paragraph i.

154.     By sitting in on Individualized Education Plan meetings for developmentally disabled students without prior written consent from the students' parents, Defendants Adams and Nunneley jointly and severally violated applicable federal law. 34 C.F.R. § 99.30.

### ENUMERATED CAUSES OF ACTION

As a direct and proximate result of Defendants' wanton, willful, reckless and oppressive misconduct, the Plaintiff, Craig Springer, and his minor daughter, A.S., have been damaged and hereby plead the following causes of action against Defendants, whom they seek to hold liable.

### COUNT I
### Violations of Free Speech Guarantees
### Against Defendants Adams, Nunneley, Richard & Dauphin, Jointly and Severally
### First Amendment, 42 U.S.C. § 1983

155.     Plaintiff incorporates by reference all preceding paragraphs.

156.     The public comment period of the meeting of the Governing Council ("GC") of Estancia Valley Classical Academy ("EVCA") held September 18, 2023, was a designated public forum.

157.     When the Plaintiff, Craig Springer ("Mr. Springer") attempted to deliver public comment there, Defendants Adams, Nunneley, Richard, and Dauphin, jointly and severally, prevented Mr. Springer from delivering public comment.

158.     The GC member Defendants were aware of the views Mr. Springer was attempting to express before they prevented him from speaking.

159.     Aforesaid Defendants' actions were, in whole or in part, unlawfully motivated by their disagreement with Plaintiff's viewpoint.

160.     Aforesaid Defendants' actions constitute viewpoint discrimination in a designated public forum.

161.     Aforesaid Defendants deprived Plaintiff of the right to freedom of speech guaranteed by the First Amendment to the United States Constitution.

162.     In depriving Plaintiff of rights secured to him under the Constitution, aforesaid Defendants jointly and severally acted under color of state law.

163.     This deprivation under color of state law is actionable, and may be redressed, under 42 U.S.C. § 1983.

164.     Aforesaid Defendants' deprivation of Plaintiff's First Amendment rights was willful, wanton, reckless, and oppressive.

165.     As a direct and proximate result of violation and deprivation of his First Amendment right to freedom of speech by Defendants Adams, Nunneley, Richard, and Dauphin, the Plaintiff, Craig Springer, has been damaged, and is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorney's fees and all costs of bringing this action, and such other and further relief as the Court deems just and equitable.

## COUNT II
### Violations of Free Speech Guarantees
### Against Defendants Adams, Nunneley, Richard & Dauphin, Jointly and Severally
### New Mexico Constitution, Article II, § 17

166.     Plaintiff incorporates by reference all preceding paragraphs.

167.     Defendants Adams, Nunneley, Richard, and Dauphin, jointly and severally, deprived Plaintiff of the right to freedom of speech guaranteed by the Constitution of the State of New Mexico, Article II, Section 17.

168.     Aforesaid Defendants' deprivation of Plaintiff's free speech rights under the New Mexico Constitution was willful, wanton, reckless, and oppressive.

169.     As a direct and proximate result of deprivation of his right to freedom of speech under the New Mexico Constitution by Defendants Adams, Nunneley, Richard, and Dauphin, the Plaintiff, Craig Springer, has been damaged, and is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorney's fees and all costs of bringing this action, and such other and further relief as the Court deems just and equitable.

**COUNT III**
**Defamation**
**Against Defendants Adams, Nunneley, Richard & Dauphin, Individually**

170.     Plaintiff incorporates by reference all preceding paragraphs.

171.     Defendants Adams, Nunneley, Richard, and Dauphin each communicated one or more false statements of fact about Plaintiff Craig Springer to others.

172.     Each aforesaid Defendant communicated aforesaid false statements intentionally, while knowing that the statements were false.

173.     Each aforesaid Defendant communicated aforesaid false statements with reckless disregard for the truth.

174.     Each aforesaid Defendant communicated aforesaid false statements negligently.

175.     Each aforesaid Defendant communicated aforesaid false statements without privilege or in a manner that abused a qualified privilege.

176.     The persons to whom each aforesaid Defendant communicated aforesaid false statements understood those false statements to have a defamatory meaning.

177.     As a direct and proximate result of aforesaid false statements, Plaintiff suffered public humiliation, mental anguish, and harm to his reputation in the community.

178.     As a direct and proximate result of defamation by Defendants Richard, Nunneley, Adams, and Dauphin, the Plaintiff, Craig Springer, has been damaged, and is entitled to

compensatory damages, punitive damages, pre- and post-judgment interest, attorney's fees and all costs of bringing this action, and such other and further relief as the Court deems just and equitable.

**COUNT IV**
**Deprivation of Property Without Due Process**
**Against Defendants Adams, Nunneley, Richard & Dauphin, Jointly and Severally**
**14th Amendment, 42 U.S.C. § 1983**

179.    Plaintiff incorporates by reference all preceding paragraphs.

180.    Plaintiff Craig Springer's minor daughter, A.S., has a property interest in a public primary education at a classical charter school affiliated with Hillsdale College ("Hillsdale") through the Barney Charter School Initiative ("BCSI").

181.    Under the 14th Amendment to the United States Constitution, A.S. may not be deprived of aforesaid property without due process of law.

182.    At all times relevant to this action, A.S. had a reasonable expectation of continuing to enjoy aforesaid property.

183.    A.S. was deprived of aforesaid property by Defendants Adams, Nunneley, Richard and Dauphin.

184.    A.S.'s interest in, and reasonable expectation of continuing to enjoy, aforesaid property is defined by:

a.    EVCA's former contract with Hillsdale College.

b.    EVCA's charter contract with the State of New Mexico.

c.    EVCA's continuous status, from the time of its founding until May 2023, as a Hillsdale BCSI member school.

d.     The entire time—six years—A.S. spent as a student at EVCA, from 2017-2023, during which time EVCA was continuously a Hillsdale BCSI member school.

185. Aforesaid GC member Defendants deprived A.S. of aforesaid property without due process of law.

186. Due process for depriving A.S. of aforesaid property is defined by:

    a. EVCA's charter contract.

    b. EVCA's By-Laws.

    c. New Mexico State law.

187. In depriving A.S. of her property interest in a Hillsdale education, aforesaid Defendants jointly and severally failed to abide by the charter contract, the By-Laws, and New Mexico law.

188. In depriving A.S. of aforesaid property, aforesaid Defendants jointly and severally failed to provide A.S. with adequate notice and a fair hearing.

189. In depriving A.S. of rights secured to her under the Constitution without due process of law, aforesaid Defendants jointly and severally acted under color of state law.

190. This deprivation of property without due process, under color of state law, is actionable, and may be redressed, under 42 U.S.C. § 1983.

191. As a direct and proximate result of deprivation of property without due process of law in violation of the 14th Amendment by Defendants Adams, Nunneley, Richard, and Dauphin, A.S. has been damaged, and is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorney's fees and all costs of bringing this action, and such other and further relief as the Court deems just and equitable.

## COUNT V
### Tortious Interference with Contract
### Against Defendants Adams, Nunneley, Richard & Dauphin, Jointly and Severally

192. Plaintiff incorporates by reference all preceding paragraphs.

193.     Plaintiff's daughter, A.S., was a third-party beneficiary of the contract between EVCA and Hillsdale.

194.     Defendants Adams, Nunneley, Richard, and Dauphin knew of aforesaid contract and of A.S.'s third-party beneficiary status.

195.     Aforesaid Defendants, jointly and severally, caused the contract to be terminated, and prevented A.S. from receiving its benefits.

196.     Aforesaid Defendants, jointly and severally, played an active and substantial role in causing the contract to be terminated and A.S. to be deprived of its benefits.

197.     Aforesaid Defendants' deprivation of A.S. from receiving the contract benefits was willful, wanton, reckless, and oppressive.

198.     Aforesaid Defendants acted for improper purposes and without justification or privilege.

199.     As a direct and proximate result of  tortious interference with contract by Defendants Adams, Nunneley, Richard, and Dauphin, A.S. has been damaged, and is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorney's fees and all costs of bringing this action, and such other and further relief as the Court deems just and equitable.

### COUNT VI
### Declarative & Injunctive Relief
### Against All Defendants, Jointly and Severally
### 42 U.S.C. § 1983

200.     Plaintiff incorporates by reference all preceding paragraphs.

201.     All Defendants jointly and severally deprived Plaintiff of his First Amendment right to freedom of speech.

202.     All Defendants jointly and severally deprived Plaintiff's minor daughter, A.S., of property without due process of law, in violation of the 14th Amendment.

203.     Defendants' deprivation of Plaintiff's First Amendment rights, and Defendants' deprivation of A.S.'s rights under the 14th Amendment, were willful, wanton, reckless, and oppressive.

204.     In depriving Plaintiff and A.S. of these rights, Defendants acted under color of state law.

205.     This deprivation under color of state law is actionable, and may be redressed, under 42 U.S.C. § 1983.

206.     Under 42 U.S.C. § 1983, the Court is empowered to issue declarative and injunctive remedies.

207.     As such, an order should issue, declaring that Defendants violated Plaintiff's rights under the First Amendment, and A.S.'s rights under the 14th Amendment.

208.     The order should enjoin Defendants, their officers, agents, affiliates, subsidiaries, servants, employees and all other persons or entities in active concert, privity or participation with them, from:

> a.   Restraining, prohibiting, or suppressing members of the public including Plaintiff from delivering public comment at meetings of the Governing Council of Defendant Estancia Valley Classical Academy, subject to reasonable time, place and manner restrictions.
>
> b.   Taking retaliatory action against Plaintiff, his wife, or A.S., for exercising or advocating for constitutional rights, or for bringing this action.

209.     The order should declare that EVCA's relationship with Hillsdale is a matter of public policy, and enjoin the GC from formulating public policy without first seeking and receiving public input in an open meeting publicized in advance to parents, faculty and staff via mass email within a reasonable prior timeframe.

210.     Subject to aforesaid requirements, the order should require the GC to take any and all practicable steps to restore the *status quo ante* that existed at EVCA vis a vis Hillsdale, prior to the GC's termination of the school's Hillsdale BCSI member school affiliation.

211.     Should the declarative and injunctive relief requested herein not be granted, Plaintiff may again be subjected to the deprivation of his First Amendment rights by Defendants.

212.     Should the declarative and injunctive relief requested herein not be granted, A.S. will continue to be deprived of property without due process required by the 14th Amendment.

213.     Should the declarative and injunctive relief requested herein not be granted, Plaintiff, as an EVCA parent, as well as Plaintiff's wife who is employed at EVCA, and A.S., who is a student there, may be subject to retaliation for bringing this action.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff, CRAIG SPRINGER, hereby prays this Honorable Court for

relief as follows:

I.      Compensatory damages.

II.     Punitive damages.

III.    Pre- and post-judgment interest.

IV.    Attorney's fees.

V.     All costs of bringing this action.

VI.    Declarative and injunctive relief as hereinbefore requested.

VII.   Such other and further relief as the Court deems just and equitable.

Respectfully submitted,

By: *s/ Aaron Cress*
Aaron T. Cress, Esq.
LATE NIGHT LAW
12231 Academy Rd NE 301-274
Albuquerque, NM 87111
(505) 225-2623
aaron@latenightlaw.com

*Attorney for Plaintiff Craig Springer*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| CRAIG SPRINGER, individually and as next friend of his minor child, A.S., *Plaintiff*, | §<br>§<br>§<br>§ | |
| | § | CIVIL ACTION No. 1:23-cv-01137 |
| v. | §<br>§ | |
| ESTANCIA VALLEY CLASSICAL ACADEMY, a New Mexico public school, KIM ADAMS, THERESA NUNNELEY, BILL RICHARD and STEPHEN DAUPHIN, *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | **JURY DEMANDED** |

---

### JURY DEMAND

---

In accordance with Federal Rules of Civil Procedure, Rule 38, the Plaintiff, Craig

Springer, hereby demands trial by jury of all issues so triable in the above-captioned cause.


Respectfully Submitted,

By: *s/ Aaron Cress*
Aaron T. Cress, Esq.
LATE NIGHT LAW
12231 Academy Rd NE 301-274
Albuquerque, NM 87111
aaron@latenightlaw.com
(505) 225-2623

*Attorney for Plaintiff Craig Springer*